**Iris Calder NOWELL, Plaintiff, Appellant,**

v.

**Ames NOWELL et al., Defendants, Appellees.**

**No. 7316.**

United States Court of Appeals First Circuit.

Nov. 17, 1969.

Mark A. Michelson, Boston, Mass., with whom Choate, Hall & Stewart, Boston, Mass., was on brief, for appellant.

Stephen A. Moore, Boston, Mass., for National Shawmut Bank of Boston, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This case raises the question whether a non-resident plaintiff who has a foreign judgment against a non-resident defendant of another state may institute an action in the federal court by making an attachment, legal or equitable, upon funds held by a local trustee of a trust of which the defendant is the life beneficiary. The district court dismissed the action, 296 F.Supp. 640, and plaintiff appeals.

A preliminary question is one of subject-matter jurisdiction, it being elementary that, defendant being absent, plaintiff must establish the presence of a res. Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. This question arises because, while the local trustee on whom personal service has been effected is a bank which holds the physical evidences of the intangibles that constitute the assets and manages the trust, there is another trustee,[1] who is a non-resident and cannot be served within the district. Plaintiff named this trustee as a party defendant, but did not attempt to make substituted service upon him. This defect could be remedied, and for purposes of this opinion we will assume that it has been done. It does not follow that the court would have jurisdiction of the res.

Plaintiff seeks two forms of relief; a judgment permitting her to reach the accumulated income of the trust presently due the defendant, but as yet unpaid, and some sort of equitable charge of broader compass against future income or the trust principal. If plaintiff has a lien or any other claim, her maximum enforceable right would be against the accumulated income, which we will regard for such purposes as the equivalent of a debt. *Cf*. Woodard v. Snow, 1919, 233 Mass. 267, 275, 124 N.E. 35, 5 A.L.R. 1381. The equitable nature of

---

1. A still third trustee is the defendant himself, but as this presents less, rather than more, difficulty, this fact will be disregarded.

the balance of plaintiff's claim may, or may not, create problems—a matter considered by the district court, but which we need not pursue—but we are given no reason to suppose that it eliminates problems. We therefore treat this case as simply one in which the absent defendant is owed a present, liquidated debt.

 Assuming a debt, the trustees are joint debtors. *Cf.* Zwick v. Goldberg, 1939, 304 Mass. 66, 70, 22 N.E.2d 661. The question accordingly arises whether the debt is attached if personal service is obtained over only one of them. As the court pointed out in Curnane v. Curnane, 1940, 306 Mass. 74, 27 N.E.2d 714, where but one of two resident debtors, there executors under a will, was served with trustee, or garnishee, process, the other might proceed to discharge the debt. The court held that the co-executor was an indispensable party, and must be personally served. We think, however, that this was regarded as a procedural or practice matter, and not one of basic jurisdiction, for the court expressly recognized that it might make exceptions, citing with apparent approval an early case where the other debtor was a non-resident and not amenable to service.[2] We conclude that in the case at bar Massachusetts would regard the debt as sufficiently within its borders for the purpose of attachment, and that we should. We also conclude that due process merely requires the attaching creditor to do the best he can, and that substituted service giving notice to a non-resident debtor is not constitutionally deficient. *Cf.* Rorick v. Devon Syndicate, Ltd., 1939, 307 U.S. 299, 59 S.Ct. 877, 83 L.Ed. 1303. To hold otherwise would be to say that a joint debt, where the debtors were residents of different states, had no presence anywhere. By the same token we have no F.R.Civ.P. 19 issue.

The same reasoning leads us to believe that quasi in rem jurisdiction would exist against the assets or principal of the trust in the state where the managing trustee resides. While this point was not decided in Hanson v. Denckla, *supra,* we read the opinion as leading in that direction. *See* 357 U.S. at 247, nn. 16, 17, 78 S.Ct. 1228. *See also,* Andrews, Situs of Intangibles in Suits Against Nonresident Claimants, 1939, 49 Yale L.J. 241, 253–54.

██ Plaintiff's more substantial difficulty starts with the case of Big Vein Coal Co. of West Virginia v. Read, 1913, 229 U.S. 31, 33 S.Ct. 694, 57 L.Ed. 1053. There the Court held that a case similar to this one, in that the absent defendant was owed a local debt, could not be maintained because of the "settled rule" that an attachment is "but an incident to a suit, and that, unless jurisdiction can be obtained over the defendant, his estate cannot be attached in a Federal court." 229 U.S. at 38, 33 S.Ct. at 696. This restriction on garnishment is peculiar to the federal courts. *See, e. g.,* National Shawmut Bank of Boston v. City of Waterville, 1934, 285 Mass. 252, 189 N.E. 92; B. Currie, Attachment and Garnishment in the Federal Courts, 1961, 59 Mich.L.Rev. 337. It is not a basic jurisdictional problem, as is demonstrated by the fact that if the garnishee action is commenced in the state court it may be entertained by removal. Rorick v. Devon Syndicate, *supra; see* 28 U.S.C. § 1450. *Big Vein Coal Co.* was modified, in a manner not presently relevant, in Rorick v. Devon Syndicate, and an attempt to limit it further was made in the 1963 amendment of F.R.Civ.P. 4(e). The extent of this limitation we need not decide, but see Moore, Federal Practice, ¶

---

2. Parker v. Danforth, 1820, 16 Mass. 299, 302. *See also* Warner v. Perkins, 1851, 8 Cush. (62 Mass.) 518, where the court said: "We are inclined to the opinion, that when the plaintiff proposes to charge trustees, as holding a credit, or being debtors to the principal defendant, all must be served with process, who are jointly liable, and who are inhabitants of the state, and may be served with process."

4.32(2), p. 1236, for the Advisory Committee's Note recognized that its amendment could not obviate statutory restrictions as to venue. See U.S.C.A. 1969 Supplement, Rule 4; F.R.Civ.P. 82. In the present diversity situation, where both the plaintiff and the defendant are nonresidents of the district, the venue requirements are insurmountable. 28 U.S.C. § 1391(a).

This would not be so if the action were to perfect a lien under 28 U.S.C. § 1655, where the location of the res would control. See 1 Moore, Federal Practice, ¶ 0.142 [2.–4]. It is not such an action. Dry Clime Lamp Corp. v. Edwards, 5 Cir., 1968, 389 F.2d 590. The manifest purpose of that section is to permit a determination of the validity of a lien claimed to be in existence, not to create one for a general creditor. Some of the earlier cases are collected in Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961–1963(I), 1964, 77 Harv.L.Rev. 601, at 622–23, where the author, the then Reporter to the Advisory Committee, states,

> "[S]ection 1655 does not furnish a basis for initiating an action against a nonresident by quasi-in-rem methods, that is, by attaching, garnishing, or otherwise laying hold of the nonresident's property, to which the plaintiff had no previous specific claim, * *."

Insofar as the Seventh Circuit has indicated otherwise, we will not follow it.[3]

We must conclude that, in spite of certain liberalization that has been effected by the amendment of Rule 4(e), this is another instance where the right to sue in the federal court and the right to remove thereto do not coincide. Cf. 28 U.S.C. § 1441(b). Any inconsistency, however, is for Congress, not for the courts.

Affirmed.

3. See Huntress v. Huntress' Estate, 7 Cir., 1956, 235 F.2d 205, 61 A.L.R.2d 682; Graff v. Nieberg, 7 Cir., 1956, 233 F.2d 860. The court cited no authority, and failed to analyze what seems to us the plain language of the statute.